# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GEORGE NEIL CROWBRIDGE,

       Plaintiff,

       v.                         Case No. 14-CV-736

UNITED STATES OF AMERICA,

       Defendant.

# DECISION AND ORDER

On June 25, 2014, plaintiff George Neil Crowbridge, proceeding pro se, paid the full cost of filing an action and filed a complaint wherein he named the United States of America as the defendant. (ECF No. 1.) Rather than answering the complaint, the United States filed a motion to dismiss on September 2, 2014. (ECF No. 6.) The United States subsequently sought (ECF No. 10) and was granted (ECF No. 12) leave to amend the motion to dismiss to comply with Civil Local Rule 56(a)(1)(2).

When Crowbridge did not respond to the amended motion to dismiss within the time permitted under Civil Local Rule 7(b), the court entered an order requiring him to respond no later than October 31, 2014 and warning him that failure to do so would result in the court granting the United States' motion to dismiss pursuant to Civil Local

Rule 7(d). (ECF No. 15.) On October 21, 2014, Crowbridge submitted two documents: a response to the motion to dismiss (ECF No. 16) and a motion for the appointment of counsel (ECF No. 17).

With respect to Crowbridge's motion for the appointment of counsel, unlike persons facing criminal charges, civil litigants do not have a constitutional or statutory right to appointed counsel. *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014); *Santiago v. Walls*, 599 F.3d 749, 752 n.1 (7th Cir. 2010). Courts lack the authority to "appoint" an attorney to represent a civil litigant. *Santiago*, 599 F.3d at 752 n.1; *see also Mallard v. United States Dist. Court for Southern Dist.*, 490 U.S. 296, 307 (1989). Instead, a court may merely "request an attorney to represent" a person who is unable to afford counsel. 18 U.S.C. § 1915(e)(1). Moreover, the court lacks funds to compensate an attorney for time spent representing an indigent civil litigant. Thus, although often referred to as "appointing" an attorney, this is just convenient shorthand for the recruitment process. *See Santiago*, 599 F.3d at 752 n.1. This court's power is limited to attempting to recruit a lawyer who is willing to accept a case free of charge.

Deciding whether or not to attempt to recruit a volunteer attorney "is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Henderson*, 755 F.3d at 564 (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

Thus, the court is forced to limit its recruitment of volunteer attorneys to those litigants who need counsel the most. *Id.*

In determining whether it is appropriate to attempt to recruit a volunteer attorney to represent an indigent litigant the first question the court must consider is whether the litigant made reasonable attempts to secure private counsel on his or her own. *Romanelli v. Suliene*, 615 F.3d 847, 849 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Once this threshold burden has been met, the court considers the information it has about the plaintiff and the case and determines whether it appears that the case is so difficult that the plaintiff would be unable to adequately litigate it. *Henderson*, 755 F.3d at 565. A lack of legal knowledge or even general educational deficits, standing alone, are not sufficient to merit the appointment of counsel, for the latter is true of nearly all and the former true of many pro se litigants. *Pruitt*, 503 F.3d at 660, 663. It is also not enough that a lawyer might do a better job handling the case, but rather the question is whether the case is so complex that a person of the plaintiff's abilities would be unable to coherently present the case to a judge or a jury. *Henderson*, 755 F.3d at 565.

However, it would be inappropriate to attempt to recruit a volunteer attorney if the complaint fails to present a plausible claim for relief. Therefore, it is necessary for the court to consider the United States' motion to dismiss before turning to Crowbridge's request for counsel. *Cf. Holland v. City of Gary*, 503 Fed. Appx. 476, 478

(7th Cir. 2013) (unpublished) ("[R]epresentation of an indigent party in a civil case does not extend to frivolous cases.") (citing *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)). In doing so, in light of the plaintiff's pro se status, the court must liberally construe Crowbridge's complaint and shall not hold it to the stringent and formal standards required for pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The United States seeks dismissal of Crowbridge's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The Rule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Nevertheless, "plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* at 581 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This does not, however, mean that a plaintiff must show that his claim is "probable"; rather, the plaintiff must show merely that the claim is "plausible." *Id.* (citing *Twombly*, 550 U.S. at 555-56). In other words, "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id.*

Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to give the court "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The court is not concerned with whether the events alleged *did* happen but rather with whether they *could* have happened. *Id.* Factual allegations that are "sketchy or implausible" may be insufficient to provide a defendant with adequate notice of the plaintiff's claim. *Brooks*, 578 F.3d at 581. While the court will generally accept as true the allegations contained in the plaintiff's complaint, this does not require the court to "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

According to his complaint, Crowbridge was served with divorce papers on July 11, 2011. (ECF No. 1 at 3.) However, he alleges, the person who was seeking to divorce him was not actually his wife but rather a federal agent who had been impersonating his wife and living with Crowbridge for the past year-and-a-half. (ECF No. 1 at 3.) This "fake divorce" allegedly led to a number of related incidents in which Crowbridge was forced from his home for extended periods of time, incarcerated, his homes were searched, his property was stolen, and Crowbridge was the subject of a domestic violence restraining order. (ECF No. 1 at 3.) He asserts that some of the persons who

were involved in the incidents were actually undercover law enforcement officers. (ECF No. 1 at 4.)

Crowbridge further alleges that his mother has died but has been replaced with an impersonator (ECF No. 1 at 3) and that he is the subject of constant surveillance, including on his phone, post office box, and GPS on his vehicles (ECF No. 1 at 4). When Crowbridge attempted to file with the FBI a missing person report regarding his wife, it was refused, purportedly because an acceptance of the missing person report by the FBI would force an end to the "fake divorce." (ECF No. 1 at 4.)

In effect, Crowbridge alleges that for unspecified reasons he is the target of a vast and highly sophisticated conspiracy involving law enforcement and government officials. Allegations such as these require a plaintiff to meet a high standard of plausibility before a case will be permitted to proceed. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *see also Walton v. Walker*, 364 Fed. Appx. 256, 258 (7th Cir. 2010) (unpublished) (quoting *Cooney*) ("[B]efore subjecting defendants to 'paranoid pro se litigation … alleging … a vast, encompassing conspiracy,' the plaintiff must meet a 'high standard of plausibility.'").

Here, in nearly every respect, Crowbridge offers nothing more than unsupported conclusions, neglecting any of the factual support that is necessary to enable the court to conclude, based upon its experience, common sense, and the nature of the claim, that the allegations contained in Crowbridge's complaint are plausible. In short,

Crowbridge's story regarding a vast and sophisticated conspiracy against him does not "hold together." *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson*, 614 F.3d at 404-05).

The only specific and superficially plausible allegation contained in Crowbridge's complaint that is related to a person who is reasonably associated with the United States government (for present purposes, the court looks past issues as to whether the United States as opposed to some subdivision or individual might be a proper defendant for Crowbridge's allegations) is the assertion that the FBI refused to take a missing persons report regarding Crowbridge's wife. Thus, for purposes of the pending motion, the court presumes that Crowbridge presented his concerns regarding his wife to the FBI and the FBI declined to investigate.

However, without more, such an allegation does not establish a cause of action against the United States (or the FBI or any individual employee of the FBI). *See Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (noting that the FBI's decision to initiate an investigation is discretionary; something more, e.g., a plausible allegation that it refused to investigate a matter because of the complainant's race, is required to state a cause of action); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (noting that the decision to prosecute or enforce a matter "is a decision generally committed to an agency's absolute discretion.") Here, the only reason Crowbridge offers as to why the FBI declined to investigate the matter was because it would have resulted in exposing the "fake

divorce." That allegation regarding a vast conspiracy focused around the "fake divorce" is implausible, and thus the court concludes that Crowbridge has failed to state a claim regarding the FBI's alleged failure to investigate his report that his wife was missing.

Therefore, having concluded that Crowbridge failed to state a claim upon which relief may be granted, the court must grant the United States' motion to dismiss and dismiss the complaint. *See, e.g., Coleman v. Marberry*, 2012 U.S. Dist. LEXIS 144277 (S.D. Ind. Oct. 5, 2012) ("[The plaintiff's] fourth amendment complaint consists of nothing more than naked assertions of a conspiracy devoid of further factual enhancement and must be dismissed for failing to meet the requirements of Rule 8.") Consequently, Crowbridge's motion for the appointment of counsel is moot and denied as such.

**IT IS THEREFORE ORDERED** that the United States' amended motion to dismiss (ECF No. 13) is **granted**, and the complaint and this action are hereby dismissed. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the plaintiff's motion for the appointment of counsel (ECF No. 17) is **denied as moot.**

Dated at Milwaukee, Wisconsin this 29th day of October, 2014.

WILLIAM E. DUFFIN
U.S. Magistrate Judge